# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

| | | |
|---|---|---|
| TONYA LONGMIRE, ADMINISTRATOR OF THE ESTATE OF DAI'YAAN QAMAR LONGMIRE, DECEASED | ) ) ) ) | CASE NO. CASE NO. 2:16-cv-00653 HCM - LRL |
| 814 Spencer Court Virginia Beach, VA 23451 | ) ) | JUDGE HENRY C. MORGAN, JR. |
| Plaintiff, | ) ) ) | MAGISTRATE JUDGE LAWRENCE R. LEONARD |
| vs. | ) ) ) | |
| VIRGINIA DEPARTMENT OF CORRECTIONS | ) ) | |
| c/o Harold W. Clarke 6900 Atmore Drive Richmond, VA 23225 | ) ) ) | **AMENDED COMPLAINT** *[Jury Demand Endorsed Hereon]* |
| and | ) ) ) | |
| JAMES S. KEELING Indian Creek Correctional Center 801 Sanderson Road Chesapeake, VA 23328 | ) ) ) ) ) | |
| and | ) ) | |
| LAKEIA S. SMALLWOOD c/o James S. Keeling, Warden Indian Creek Correctional Center 801 Sanderson Road Chesapeake, VA 23328 | ) ) ) ) ) ) | |
| and | ) ) | |
| THOMAS A. SAWYER c/o James S. Keeling, Warden Indian Creek Correctional Center 801 Sanderson Road | ) ) ) ) | |

Chesapeake, VA 23328                          )
                                             )
  and                              )
                                             )
CHANCE MCCOOLE                               )
c/o James S. Keeling, Warden                 )
Indian Creek Correctional Center             )
801 Sanderson Road                           )
Chesapeake, VA 23328                         )
                                             )
  and                              )
                                             )
GARY A. HADEN                                )
c/o James S. Keeling, Warden                 )
Indian Creek Correctional Center             )
801 Sanderson Road                           )
Chesapeake, VA 23328                         )
                                             )
  and                              )
                                             )
PAMELA E. WOOD                               )
c/o James S. Keeling, Warden                 )
Indian Creek Correctional Center             )
801 Sanderson Road                           )
Chesapeake, VA 23328                         )
                                             )
  and                              )
                                             )
DAVID R. WYNN                                )
c/o James S. Keeling, Warden                 )
Indian Creek Correctional Center             )
801 Sanderson Road                           )
Chesapeake, VA 23328                         )
                                             )
  and                              )
                                             )
JOHN J. NIDA                                 )
c/o James S. Keeling, Warden                 )
Indian Creek Correctional Center             )
801 Sanderson Road                           )
Chesapeake, VA 23328                         )
                                             )
  and                              )

2

DAVID L. KIDD                              )
c/o James S. Keeling, Warden              )
Indian Creek Correctional Center          )
801 Sanderson Road                        )
Chesapeake, VA 23328                      )
                                          )
        and                               )
                                          )
JO ANN HALSEY-HARRIS                      )
c/o James S. Keeling, Warden              )
Indian Creek Correctional Center          )
801 Sanderson Road                        )
Chesapeake, VA 23328                      )
                                          )
        and                               )
                                          )
ROGER D. NOLES                            )
c/o James S. Keeling, Warden              )
Indian Creek Correctional Center          )
801 Sanderson Road                        )
Chesapeake, VA 23328                      )
                                          )
        and                               )
                                          )
V.T. COLEMAN                              )
c/o James S. Keeling, Warden              )
Indian Creek Correctional Center          )
801 Sanderson Road                        )
Chesapeake, VA 23328                      )
                                          )
        and                               )
                                          )
ALLISON M. ANDERSON                       )
c/o James S. Keeling, Warden              )
Indian Creek Correctional Center          )
801 Sanderson Road                        )
Chesapeake, VA 23328                      )
                                          )
        and                               )
                                          )
ROBERT B. CROFT                           )
c/o James S. Keeling, Warden              )

3

Indian Creek Correctional Center                    )
801 Sanderson Road                                  )
Chesapeake, VA 23328                                )
                                                    )
            and                                     )
                                                    )
CURTIS P. EVANS                                     )
c/o James S. Keeling, Warden                        )
Indian Creek Correctional Center                    )
801 Sanderson Road                                  )
Chesapeake, VA 23328                                )
                                                    )
            and                                     )
                                                    )
GREGORY C. JOHNSON                                  )
c/o James S. Keeling, Warden                        )
Indian Creek Correctional Center                    )
801 Sanderson Road                                  )
Chesapeake, VA 23328                                )
                                                    )
            and                                     )
                                                    )
ARTHUR L. MCBRIDE                                   )
c/o James S. Keeling, Warden                        )
Indian Creek Correctional Center                    )
801 Sanderson Road                                  )
Chesapeake, VA 23328                                )
                                                    )
            and                                     )
                                                    )
JAVON F. WADDELL                                    )
c/o James S. Keeling, Warden                        )
Indian Creek Correctional Center                    )
801 Sanderson Road                                  )
Chesapeake, VA 23328                                )
                                                    )
            and                                     )
                                                    )
DONNIE R. COLEY                                     )
c/o James S. Keeling, Warden                        )
Indian Creek Correctional Center                    )
801 Sanderson Road                                  )
Chesapeake, VA 23328                                )

and )
 )
 )
MICHAEL D. BROWN )
c/o James S. Keeling, Warden )
Indian Creek Correctional Center )
801 Sanderson Road )
Chesapeake, VA 23328 )
 )
and )
 )
FRANKLIN MEDINA )
c/o James S. Keeling, Warden )
Indian Creek Correctional Center )
801 Sanderson Road )
Chesapeake, VA 23328 )
 )
and )
 )
ERVIN K. WILLIAMS )
c/o James S. Keeling, Warden )
Indian Creek Correctional Center )
801 Sanderson Road )
Chesapeake, VA 23328 )
 )
and )
 )
STEPHANIE R. LAWSON )
c/o James S. Keeling, Warden )
Indian Creek Correctional Center )
801 Sanderson Road )
Chesapeake, VA 23328 )
 )
and )
 )
VERNON MAYFIELD )
c/o James S. Keeling, Warden )
Indian Creek Correctional Center )
801 Sanderson Road )
Chesapeake, VA 23328 )
 )
and )
 )

5

CARMELITA DAWSON                        )
c/o James S. Keeling, Warden           )
Indian Creek Correctional Center       )
801 Sanderson Road                     )
Chesapeake, VA 23328                   )
                                       )
            and                        )
                                       )
SHARON KING                            )
c/o James S. Keeling, Warden           )
Indian Creek Correctional Center       )
801 Sanderson Road                     )
Chesapeake, VA 23328                   )
                                       )
                     Defendants.       )
————————————————————

Now comes Plaintiff, Tonya Longmire, Administrator of the Estate of Dai'yaan Qamar Longmire, Deceased, pursuant to this Court's Order of April 6, 2017, and for her Amended Complaint against the above-named Defendants, states and avers as follows:

## PRELIMINARY STATEMENT

1.      This is a civil rights and wrongful death action brought pursuant to 42 U.S.C. § 1983 in which Plaintiff seeks monetary relief for violations of her late son's rights secured and guaranteed by the Eighth Amendment to the United States Constitution. Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 against corrections and security officials in their individual capacities.

2.      Plaintiff also asserts a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12201, *et seq.*  Plaintiff asserts that the violations of the ADA rise to the level of a constitutional violation.

3.      Plaintiff also asserts a claim under Section 504 of the Rehabilitation Act of

1973, 29 U.S.C. § 794 *et seq.* ("Rehabilitation Act"). Plaintiff asserts that the violations of the Rehabilitation Act rise to the level of a constitutional violation.

4.     The claims asserted herein arise from the conditions of Dai'yaan Longmire's confinement in segregation from October 5, 2014 through November 8, 2014, denial of appropriate and necessary medical and mental health care, and a lack of access to necessary mental health and related services during the entirety of his incarceration causing his wrongful death on November 8, 2014.

5.     Plaintiff seeks monetary damages against the Defendants, jointly and severally, as well as an award of costs and reasonable attorneys' fees, and all such other relief as the Court deems appropriate.

## JURISDICTION AND VENUE

6.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as certain claims asserted herein arise under the Constitution and laws of the United States, including 42 U.S.C. § 1983, the ADA, and the Rehabilitation Act.

7.     Venue in this judicial district is proper pursuant to 28 U.S.C. §§ 1391(b)(2), (e)(1) and (e)(2).

## PARTIES

8.     Plaintiff Tonya Longmire, is the duly appointed Administrator of the Estate of Dai'yaan Qamar Longmire, Deceased.  Ms. Longmire is the legal and biological mother of the Decedent.

9.     Dai'yaan Longmire was born July 3, 1995.  Prior to his death, Dai'yaan was a citizen of the United States entitled to protection under the laws of the United States.

10.     Dai'yaan died prematurely on November 8, 2014 at the Indian Creek Correctional Center ("Indian Creek") in Chesapeake, Virginia.  He was nineteen years old.

11.     The Virginia Department of Corrections ("VDOC") is an agency of the Commonwealth of Virginia that owned and operated Indian Creek.  The VDOC was responsible for the care, custody, and control of Dai'yaan Longmire as of May 2014 and was obligated to comply with the Rehabilitation Act and Title II of the ADA, 42 U.S.C. § 12131, *et seq.* including provisions of medical and mental health treatment for and appropriate placement of individuals under their care, custody, and control, including Dai'yaan Longmire.

12.     The VDOC is a recipient of federal financial assistance and did receive federal financial assistance during the period that Dai'yaan Longmire was under the VDOC's care, custody, and control.

13.     At all times relevant to this action, Defendant JAMES KEELING was employed by the VDOC as the Warden at Indian Creek who was acting under color of law. Defendant Keeling is a "person" under 42 U.S.C. § 1983.  Defendant Keeling is sued in his individual capacity.

14.     At all times relevant to this action, Defendant LAKEIA SMALLWOOD was a corrections officer employed by the VDOC at Indian Creek who was acting under color of law.   Defendant Smallwood is a "person" under 42 U.S.C. § 1983.  Defendant Smallwood is sued in her individual capacity. Defendant Keeling had policymaking authority at Indian Creek.

15.     At all times relevant to this action, Defendant TOM SAWYER was a

corrections official employed by the VDOC at Indian Creek who was acting under color of law.   Defendant Sawyer is a "person" under 42 U.S.C. § 1983.  Defendant Sawyer is sued in his individual capacity.

16.     Upon information and belief, Defendant Sawyer was a supervisor responsible for investigating the death of Dai'yaan Longmire.

17.     At all times relevant to this action, Defendant CHANCE MCCOOLE was a sergeant employed by the VDOC at Indian Creek who was acting under color of law. Defendant McCoole is a "person" under 42 U.S.C. § 1983.  Defendant McCoole is sued in his individual capacity.

18.     Upon information and belief, Defendant McCoole was a supervisor over corrections officers at Indian Creek, including Defendant Smallwood.

19.     At all times relevant to this action, Defendant ROGER NOLES was a corrections official employed by the VDOC at Indian Creek who was acting under color of law.   Defendant Noles is a "person" under 42 U.S.C. § 1983.  Defendant Noles is sued in his individual capacity.

20.     At all times relevant to this action, Defendant GARY HADEN was a security official employed by the VDOC at Indian Creek who was acting under color of law.   Defendant Haden is a "person" under 42 U.S.C. § 1983.  Defendant Haden is sued in his individual capacity.

21.     At all times relevant to this action, Defendant PAMELA WOOD was a security official employed by the VDOC at Indian Creek who was acting under color of law.   Defendant Wood is a "person" under 42 U.S.C. § 1983.  Defendant Wood is sued in

her individual capacity.

22.     At all times relevant to this action, Defendant DAVID WYNN was a security official employed by the VDOC at Indian Creek who was acting under color of law.   Defendant Wynn is a "person" under 42 U.S.C. § 1983.  Defendant Wynn is sued in his individual capacity.

23.     At all times relevant to this action, Defendant JOHN NIDA was a security official employed by the VDOC at Indian Creek who was acting under color of law. Defendant Nida is a "person" under 42 U.S.C. § 1983.  Defendant Nida is sued in his individual capacity.

24.     At all times relevant to this action, Defendant DAVID KIDD was a security official employed by the VDOC at Indian Creek who was acting under color of law. Defendant Kidd is a "person" under 42 U.S.C. § 1983.  Defendant Kidd is sued in his individual capacity.

25.     At all times relevant to this action, Defendant JO ANN HALSEY-HARRIS was a security official employed by the VDOC at Indian Creek who was acting under color of law.  Defendant Halsey-Harris is a "person" under 42 U.S.C. § 1983.  Defendant Halsey-Harris is sued in her individual capacity.

26.     At all times relevant to this action, Defendant VT COLEMAN was a counselor employed by the VDOC at Indian Creek who was acting under color of law. Defendant Coleman is a "person" under 42 U.S.C. § 1983.  Defendant Coleman is sued in his individual capacity.

27.     At all times relevant to this action, Defendant ALLISON M. ANDERSON

10

was a corrections officer employed by the VDOC at Indian Creek who was acting under color of law.   Defendant Anderson is a "person" under 42 U.S.C. § 1983.   Defendant Anderson is sued in her individual capacity. Defendant Anderson was previously identified in the Plaintiff's Complaint as a "Defendant John/Jane Doe Corrections Officer" as this defendant's identity as unknown until additional documents were produced as part of this lawsuit.

28.     At all times relevant to this action, Defendant ROBERT B. CROFT was a corrections officer employed by the VDOC at Indian Creek who was acting under color of law.   Defendant Croft is a "person" under 42 U.S.C. § 1983.   Defendant Croft is sued in his individual capacity. Defendant Croft was previously identified in the Plaintiff's Complaint as a "Defendant John/Jane Doe Corrections Officer" as this defendant's identity was unknown until additional documents were recently produced as part of this lawsuit.

29.     At all times relevant to this action, Defendant CURTIS P. EVANS was a corrections officer employed by the VDOC at Indian Creek who was acting under color of law.   Defendant Evans is a "person" under 42 U.S.C. § 1983.   Defendant Evans is sued in his individual capacity. Defendant Evans was previously identified in the Plaintiff's Complaint as a "Defendant John/Jane Doe Corrections Officer" as this defendant's identity was unknown until additional documents were recently produced as part of this lawsuit.

30.     At all times relevant to this action, Defendant GREGORY C. JOHNSON was a corrections officer employed by the VDOC at Indian Creek who was acting under color of law.    Defendant Johnson is a "person" under 42 U.S.C. § 1983.   Defendant Johnson is sued in his individual capacity. Defendant Johnson was previously identified in

the Plaintiff's Complaint as a "Defendant John/Jane Doe Corrections Officer" as this defendant's identity was unknown until additional documents were recently produced as part of this lawsuit.

31.     At all times relevant to this action, Defendant ARTHUR L. MCBRIDE was a corrections officer employed by the VDOC at Indian Creek who was acting under color of law.   Defendant McBride is a "person" under 42 U.S.C. § 1983.   Defendant Johnson is sued in his individual capacity. Defendant McBride was previously identified in the Plaintiff's Complaint as a "Defendant John/Jane Doe Corrections Officer" as this defendant's identity was unknown until additional documents were recently produced as part of this lawsuit.

32.     At all times relevant to this action, Defendant JAVON F. WADDELL was a corrections officer employed by the VDOC at Indian Creek who was acting under color of law.   Defendant Waddell is a "person" under 42 U.S.C. § 1983.   Defendant Waddell is sued in his individual capacity. Defendant Waddell was previously identified in the Plaintiff's Complaint as a "Defendant John/Jane Doe Corrections Officer" as this defendant's identity was unknown until additional documents were recently produced as part of this lawsuit.

33.     At all times relevant to this action, Defendant DONNIE R. COLEY was a captain employed by the VDOC at Indian Creek who was acting under color of law. Defendant Coley is a "person" under 42 U.S.C. § 1983.   Defendant Coley is sued in his individual capacity. Defendant Coley was previously identified in the Plaintiff's Complaint as a "Defendant John/Jane Doe Corrections Officer" as this defendant's identity was

12

unknown until additional documents were recently produced as part of this lawsuit.

34.     At all times relevant to this action, Defendant MICHAEL D. BROWN was a captain employed by the VDOC at Indian Creek who was acting under color of law. Defendant Brown is a "person" under 42 U.S.C. § 1983.  Defendant Brown is sued in his individual capacity. Defendant Brown was previously identified in the Plaintiff's Complaint as a "Defendant John/Jane Doe Corrections Officer" as this defendant's identity was unknown until additional documents were recently produced as part of this lawsuit.

35.     At all times relevant to this action, Defendant FRANKLIN MEDINA was a sergeant employed by the VDOC at Indian Creek who was acting under color of law. Defendant Medina is a "person" under 42 U.S.C. § 1983.  Defendant Medina is sued in his individual capacity. Defendant Medina was previously identified in the Plaintiff's Complaint as a "Defendant John/Jane Doe Corrections Officer" as this defendant's identity was unknown until additional documents were recently produced as part of this lawsuit.

36.     At all times relevant to this action, Defendant ERVIN K. WILLIAMS was a sergeant employed by the VDOC at Indian Creek who was acting under color of law. Defendant Williams is a "person" under 42 U.S.C. § 1983.  Defendant Williams is sued in his individual capacity. Defendant Williams was previously identified in the Plaintiff's Complaint as a "Defendant John/Jane Doe Corrections Officer" as this defendant's identity was unknown until additional documents were recently produced as part of this lawsuit.

37.     At all times relevant to this action, Defendant STEPHANIE R. LAWSON was an operations manager employed by the VDOC at Indian Creek who was acting under color of law.  Defendant Lawson is a "person" under 42 U.S.C. § 1983.  Defendant Lawson

is sued in her individual capacity. Defendant Lawson was previously identified in the Plaintiff's Complaint as a "Defendant John/Jane Doe Corrections Officer" as this defendant's identity was unknown until additional documents were recently produced as part of this lawsuit.

38.     At all times relevant to this action, Defendant VERNON MAYFIELD was a lieutenant employed by the VDOC at Indian Creek who was acting under color of law. Defendant Mayfield is a "person" under 42 U.S.C. § 1983. Defendant Mayfield is sued in his individual capacity. Defendant Mayfield was previously identified in the Plaintiff's Complaint as a "Defendant John/Jane Doe Corrections Officer" as this defendant's identity was unknown until additional documents were recently produced as part of this lawsuit.

39.     At all times relevant to this action, Defendant CARMELITA DAWSON was an intelligence officer employed by the VDOC at Indian Creek who was acting under color of law.   Defendant Dawson is a "person" under 42 U.S.C. § 1983.   Defendant Dawson is sued in his individual capacity. Defendant Dawson was previously identified in the Plaintiff's Complaint as a "Defendant John/Jane Doe Corrections Officer" as this defendant's identity was unknown until additional documents were recently produced as part of this lawsuit.

40.     At all times relevant to this action, Defendant SHARON KING was a health services administrator employed by the VDOC at Indian Creek who was acting under color of law.   Defendant King is a "person" under 42 U.S.C. § 1983.  Defendant King is sued in his individual capacity. Defendant King was previously identified in the Plaintiff's Complaint as a "Defendant John/Jane Doe Corrections Officer" as this defendant's identity

was unknown until additional documents were recently produced as part of this lawsuit.

**GENERAL FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

41.     At or around the age of seventeen, Dai'yaan was diagnosed with bipolar disorder and depression.  Dai'yaan had previously been diagnosed with attention deficit hyperactivity disorder (ADHD).

42.     Prior to his incarceration, Dai'yaan suffered from mental health issues and was under the care of a psychiatrist, Dr. Allen Marsden.

43.     As part of the sentencing process, Dr. Marsden requested that Dai'yaan receive psychiatric services for his known illnesses while he was incarcerated.

44.     Prior to his incarceration, Dai'yaan was receiving prescription medications for his mental health conditions, including while incarcerated by VDOC.

45.     In May 2014, the VDOC sentenced Dai'yaan to four years of incarceration as a "Youthful Offender" at Indian Creek.  The underlying offenses were related to grand larceny and burglary.

46.     At the time of his incarceration, the VDOC was, and officials employed by or under the direction of the VDOC were, aware of Dai'yaan's diagnoses of ADHD, Bipolar Disorder, depression, and anxiety, in addition to a suspected personality disorder, and Dai'yaan reported these conditions to the VDOC.

47.     In addition to reporting these mental health conditions, Dai'yaan reported a history of successfully treating his psychiatric conditions and symptoms with prescription medications.

48.     Dai'yaan Longmire was entitled to receive adequate and necessary medical

care, including mental health care, for his serious mental health needs, including those reported to and known by VDOC.

49.     Dai'yaan's psychiatric medications were discontinued when he was incarcerated.

50.     The VDOC denied Dai'yaan any medications for his known mental health conditions during the approximate 7 months of his incarceration at Indian Creek.

51.     Dai'yaan was provided no psychiatric medications at any time while he was under the care, custody, and control of the VDOC, including at Indian Creek.

52.     Dai'yaan was provided no psychiatric services, including medications or therapy, at any time while he was under the care, custody, and control of the VDOC, including at Indian Creek.

53.     The VDOC never attempted to address Dai'yaan's mental health status, despite knowing his diagnoses and need for mental health services, care, and treatment.

54.     The VDOC, including at Indian Creek, has a history of denying inmates with mental health diagnoses, like Dai'yaan Longmire, access to appropriate mental health services, including assessment, care, and treatment.

55.     The VDOC, including at Indian Creek, has a history of making housing classifications that deny mentally ill inmates, like Dai'yaan Longmire, access to mental health services, including assessment, care, and treatment.

56.     Dai'yaan entered Indian Creek in May 2014.  The Indian Creek staff who were responsible for the supervision, control, custody, care, and safety of inmates at Indian Creek, including each of the individually named Defendants, were aware of Dai'yaan's

16

psychiatric and psycho-social issues.

57.　　On or about October 5, 2014, Dai'yaan Longmire was alleged to have aided and abetted the theft of an inmate's canteen, valued at twelve dollars.

58.　　Specifically, Dai'yaan was alleged to have provided a "lookout" for another inmate while that inmate took another inmate's canteen.

59.　　Dai'yaan was penalized for the offense by being removed from Building 3A (general population) to Building 7, also known as segregation, solitary confinement, or "the hole."

60.　　Dai'yaan remained confined to Building 7 through the time of his death on November 8, 2014.

61.　　Inmates in solitary confinement spend 23 hours per day in single cells. Inmates are allowed one hour per day in a day cage during week days and are not allowed outside of their cells on weekends.

62.　　The cells in Building 7 have solid steel doors with only a small slot for food trays to be passed.

63.　　Individuals in Building 7 are denied virtually any human contact or interaction.

64.　　There are security cameras in the hallways of Building 7.

65.　　During his incarceration in Building 7, Dai'yaan's already diminished mental health markedly deteriorated as he became despondent, displayed emotional outbursts, refused food, expressed an intention to engage in self-harm, and exhibited many warning signs of an inmate suffering from a mental health crisis.

66.     Solitary confinement is psychologically difficult for individuals with relatively normal and stable mental health, but can be devastating for those with mental illness.

67.     The negative effects of solitary confinement on inmates with mental illness have been well documented and are known by VDOC and Defendants Keeling, Sawyer, Haden, Smallwood, McCoole, Wood, Wynne, Nida, Kidd, Halsey-Harris, Noles, Coleman, Anderson, Croft, Evans, Johnson, McBride, Waddell, Coley, Brown, Medina, Williams, Lawson, Mayfield, Dawson, and King.

68.     These negative effects include worsening of psychiatric symptoms such as paranoia, extreme anxiety and depression, increased suicides and suicide attempts, sleep disturbances, hallucinations, and self-mutilation.

69.     Based on numerous well-known studies, case law, and documented effects of solitary confinement, the VDOC, and through its supervisory and correctional staff, is aware that the likely consequence for mentally ill inmates in solitary confinement is serious injury to their mental health.

70.     VDOC has a pattern of placing mentally ill inmates into solitary confinement.

71.     By the State of Virginia's own figures, it is estimated that 1 in 4 individuals incarcerated in the Virginia State prison system has a history of mental illness.

72.     The VDOC, and through its supervisory staff, have engaged in a pattern of placing mentally ill inmates in restrictive housing without any specific security need or purpose.

18

73.     The VDOC, and through its supervisory staff, have engaged in a deliberate effort to place mentally ill inmates and psychologically fragile inmates in housing conditions that are virtually devoid of all human contact and interaction.

74.     VDOC has a history of denying mental health care and treatment to person's in solitary confinement. Specifically, VDOC has a policy of non-action whereby it does not provide any mental health screening to inmate's placed in solitary confinement who are known to have mental health disorders in order to assess their mental health status and likelihood of self-harm; the VDOC does not provide any periodic mental health assessment to individuals known to have mental health disorders who are in solitary confinement in order to determine whether they are mentally stable enough to safely remain in solitary confinement; the VDOC does not provide any suicide screening to mentally ill inmates in solitary confinement; the VDOC does not remove from the cells of mentally unstable inmates in solitary confinement items that are likely to be used as ligatures for purposes of hanging one's self.

75.     The VDOC has a history increasing the length of sentences in solitary confinement for individuals with mental illnesses when those mental illnesses manifest themselves as emotional outbursts. That is, individuals in solitary confinement are effectively punished for displaying symptoms of their mental illnesses that are exacerbated by their detention in solitary confinement.

76.     As a result, VDOC has a policy, practice, and/or custom whereby inmates with mental health disorders are unfairly discriminated against and denied access to mental health care for serious medical and mental needs under circumstances where the need for

care is known and obvious and the absence of care is likely to cause serious injury or death, all of which rises to the level of deliberate indifference to the mental health needs of those individuals in solitary confinement.

77.     Prior to the death of Dai'yaan Longmire, the Office of the Inspector General determined that the VDOC, through its supervisory and security staff, has a pattern of inconsistent screening tools for addressing individuals who are mentally ill, insufficient personnel to satisfy demand for mental health services, poor continuity of care resulting in disruptions or complete breakdowns in mental health treatment, overuse of segregation on the mentally ill population, and a lack of training for prison security personnel on crisis intervention.

78.     Despite knowing the risks of worsening mental health and suicide imposed by solitary confinement on the mentally ill population, James Keeling, a policy maker at Indian Creek, has continued a pattern of excessive use of solitary confinement and other restrictive housing measures, undertraining staff on the risks of suicide and crisis intervention, denying mentally ill inmates in solitary confinement legitimate access to mental health personnel, and remaining deliberately indifferent to prisoners with mental health disorders once those prisoners are placed in solitary confinement.

79.     On October 21, 2014, approximately two weeks after being placed in Building 7, Dai'yaan self-inflicted an injury to his hand that required medical attention.

80.     Approximately two days before Dai'yaan was scheduled to be released from Building 7 and returned to general population, on or about November 8, 2014, Defendant Lakeia Smallwood, a corrections officer, became upset with Dai'yaan and when Dai'yaan

exhibited a non-violent emotional outburst that was a manifestation of his deteriorating mental health.

81.   Upon information and belief, Defendant Smallwood ordered Dai'yaan to remain in solitary confinement and threatened additional solitary confinement and punishment for an emotional outburst that was a manifestation of his untreated mental illness and placement in solitary confinement.

82.   Because of the charge alleged by Smallwood, Longmire was prohibited from returning to general population and was threatened to remain in solitary confinement in Building 7 for an extended period of time.

83.   As soon as Dai'yaan was re-ordered to solitary confinement he became visibly upset, crying loudly, and screaming.

84.   It was obvious to eyewitnesses that Dai'yaan was in significant emotional distress.

85.   Dai'yaan complained that he wanted to speak to his mother; however, he was unable to do so given the restrictions on making calls while in solitary confinement.

86.   When food trays were delivered to the cell, Dai'yaan refused the tray and began screaming, yelling, and crying.  This outburst was observed by security staff at Indian Creek, including by Smallwood and McCoole.

87.   Dai'yaan was denied any mental health assessment or services from a qualified mental health professional.

88.   Security checks were not increased over the regular 30 minute intervals despite Dai'yaan's visibly declining mental health.

21

89.     Several hours later, food was delivered to the cell for the evening meal. Dai'yaan had a nearly identical outburst.  This outburst was observed by security staff at Indian Creek, including Smallwood and McCoole.

90.     Dai'yaan was denied any mental health assessment or services; security checks were not increased over the regular 30 minute intervals despite Dai'yaan's obvious mental health crisis; and no effort was made to determine whether solitary confinement was suitable or safe for Dai'yaan.

91.     During a routine 30-minute security check on November 8, 2014, Dai'yaan expressed an intention to harm himself to corrections staff, including Smallwood and McCoole.

92.     Defendant Smallwood acknowledged Dai'yaan's statement and kept walking.  Smallwood did nothing to address Dai'yaan's threat of self-harm.

93.     Upon information and belief, Defendants Keeling, Sawyer, Haden, Smallwood, McCoole, Wood, Wynne, Nida, Kidd, Halsey-Harris, Noles, Coleman, Anderson, Croft, Evans, Johnson, McBride, Waddell, Coley, Brown, Medina, Williams, Lawson, Mayfield, Dawson, and King were each involved in either the decision to place Dai'yaan Longmire in segregation and / or directly interacted with Dai'yaan while he was in segregation and experiencing a mental health crisis.

94.     Upon information and belief, Dai'yaan's emotional outbursts and threats of self-harm were conveyed by McCoole and/or Smallwood to Sawyer, Haden, Wood, Wynne, Nida, Kidd, Halsey-Harris, Noles, Coleman, Anderson, Croft, Evans, Johnson, McBride, Waddell, Coley, Brown, Medina, Williams, Lawson, Mayfield, Dawson, and

22

King before Dai'yaan committed suicide.

95.     Upon information and belief, Defendants Keeling, Sawyer, Haden, Smallwood, McCoole, Wood, Wynne, Nida, Kidd, Halsey-Harris, Noles, Coleman, Anderson, Croft, Evans, Johnson, McBride, Waddell, Coley, Brown, Medina, Williams, Lawson, Mayfield, Dawson, and King each knew, by their own observations or through information that was provided to them, that during the period that Dai'yaan Longmire was in Building 7 and prior to his death, Dai'yaan Longmire was suffering a mental health crisis making the threat of suicide foreseeable, and none of these Defendants took any effort to provide any resources to help reduce the risk of suicide.

96.     After verbalizing intent to kill himself, Defendants offered Mr. Longmire no psychiatric or other mental health assistance, took no precautions to safeguard against suicide, including removing bed sheets or other items that could be used as ligatures, increasing security checks of Dai'yaan, or placing Dai'yaan on suicide watch.

97.     Verbalized threats of self-harm should be taken seriously by corrections staff at Indian Creek.

98.     As part of a routine security check at approximately 5:30pm, Dai'yaan was discovered hanging from a ligature made of a bed sheet that was tied to a vent in the ceiling.

99.     Dai'yaan committed suicide between 5:00pm and 5:30pm on November 8, 2014.

100.    Security checks were never increased beyond the usual 30 minute intervals at any time between October 5, 2014 and Dai'yaan's death on November 8, 2014 and no action was taken by any Defendant in response to Dai'yaan's mental health crisis.

101.    On November 12, 2014, Plaintiff received a letter from Warden James Keeling stating that her son had died four days earlier.  This was the first notification the family received.  In addition to stating that Dai'yaan had died, the letter stated that within 60 days the Virginia Department of Corrections Chief Physician would provide a letter outlining the exact cause of death.  To date, the family has received nothing despite multiple requests.

102.    A suicide note was found in Dai'yaan's cell.  A copy of that suicide note has never been provided to Dai'yaan's family despite multiple requests.

## FIRST CLAIM FOR RELIEF

### (Violation of the Americans with Disabilities Act –  Virginia Department of Corrections)

103.    Plaintiff incorporates each of the foregoing paragraphs with the same force and effect as if fully restated herein.

104.    The VDOC is a public entity subject to the mandates and provisions of Title II of the ADA.

105.    The VDOC is responsible for ensuring that correctional facilities it owns and operates, including Indian Creek, comply with the mandates of Title II of the ADA.

106.    As Dai'yaan Longmire was known to carry a diagnosis of ADHD, bipolar disorder, depression, and anxiety, as well as a suspected personality disorder, Dai'yaan had a physical or mental impairment that substantially limited one or more of his major life activities, had a record of such impairment, and was regarded as having such impairment by the VDOC.

24

107. Dai'yaan was qualified to participate in and receive psychiatric services for his known mental health conditions.

108. At all times relevant to this action, the VDOC was required to provide adequate and appropriate mental health care to those individuals detained at Indian Creek, including Dai'yaan Longmire, and Dai'yaan Longmire, having been detained at Indian Creek, was qualified to receive this mental health care.

109. Dai'yaan Longmire was a qualified individual with a disability as that term is used under the ADA.

110. At all times relevant to this action, agents / employees of the VDOC, including but not necessarily limited to Defendants, had actual subjective awareness of Dai'yaan's disabilities and Dai'yaan, as well as others on his behalf, requested reasonable accommodations, including, but not necessarily limited to, psychiatric services and treatment and placement in a facility with adequate psychiatric services and treatment, including medications.

111. The VDOC, through the acts of its agents / employees of the Virginia Department of Corrections, including but not necessarily limited to the named Defendants, discriminated against Dai'yaan Longmire in violation of the ADA by refusing and / or failing to make these requested and reasonable accommodations for his disabilities by, among other acts, refusing and / or failing to place Dai'yaan in a facility equipped to care for Dai'yaan's psychiatric illnesses and failing and / or refusing to provide Dai'yaan access to or delivery of psychiatric services and treatment and continued placement of Dai'yaan in solitary confinement after it became apparent that he was contemplating self-harm.

112.     The VDOC, and through its supervisory staff, have engaged in a pattern of placing mentally ill inmates in restrictive housing without any specific security need or purpose.

113.     The VDOC, and through its supervisory staff, have engaged in a deliberate effort to place mentally ill inmates and psychologically fragile inmates in housing conditions that are virtually devoid of all human contact and interaction.

114.     VDOC has a history of denying mental health care and treatment to person's in solitary confinement. Specifically, VDOC has a policy of non-action whereby it does not provide any mental health screening to inmate's placed in solitary confinement who are known to have mental health disorders in order to assess their mental health status and likelihood of self-harm; the VDOC does not provide any periodic mental health assessment to individuals known to have mental health disorders who are in solitary confinement in order to determine whether they are mentally stable enough to safely remain in solitary confinement; the VDOC does not provide any suicide screening to mentally ill inmates in solitary confinement; the VDOC does not remove from the cells of mentally unstable inmates in solitary confinement items that are likely to be used as ligatures for purposes of hanging one's self.

115.     The VDOC has a history increasing the length of sentences in solitary confinement for individuals with mental illnesses when those mental illnesses manifest themselves as emotional outbursts. That is, individuals in solitary confinement are effectively punished for displaying symptoms of their mental illnesses that are exacerbated by their detention in solitary confinement.

26

116.    As a result, VDOC has a policy, practice, and/or custom whereby inmates with mental health disorders are unfairly discriminated against and denied access to mental health care for serious medical and mental needs under circumstances where the need for care is known and obvious and the absence of care is likely to cause serious injury or death, all of which rises to the level of deliberate indifference to the mental health needs of those individuals in solitary confinement.

117.    The refusal to provide mental health assessment, care, and treatment to mentally ill individuals in solitary confinement, including to Dai'yaan Longmire, under the circumstances rises to the level of a constitutional violation, namely, deliberate indifference to the mental health needs of prisoners, including Dai'yaan Longmire.

118.    Dai'yaan Longmire had a serious medical need, both by historical documentation and by the nature of his actions, complaints, and threats that were indicative of escalating suicidality.

119.    Defendants, as agents of the VDOC, were subjectively aware of Dai'yaan Longmire's serious medical condition and / or Dai'yaan's serious medical condition was so obvious and apparent that even a lay person would perceive the need for a doctor's attention and immediate medical / psychiatric intervention.

120.    Despite knowledge of Dai'yaan's serious medical conditions and needs, the Defendant was deliberately indifferent to and/or acted with callous / reckless disregard for those serious medical / psychiatric needs in failing and / or refusing to provide the necessary and appropriate medical / psychiatric care, assessment, evaluation, intervention, referral, and treatment.

121.    Defendant knew, or should have known, that taking no action could and would result in the rapid deterioration of Dai'yaan's mental health and to take action on his suicidal ideations.

122.    As a direct and proximate result of the VDOC's failure to accommodate the mental health needs of mentally ill inmates in solitary confinement, Dai'yaan Longmire was forced to endure and suffer physical and psychic suffering leading to his suicide on November 8, 2014.

**WHEREFORE,** Plaintiff prays for judgment against Defendant the Virginia Department of Corrections for:

a.    Compensatory damages in an amount that will fully and fairly compensate the Estate of Dai'yaan Longmire for the injuries and losses incurred by Dai'yaan prior to his death and by the beneficiaries of Dai'yaan's estate by reason of his wrongful death;

b.    Costs of suit and reasonable attorneys' fees pursuant to 42 U.S.C. § 12205; and

c.    All such other relief which the Court deems appropriate.

## SECOND CLAIM FOR RELIEF

**(Violation of 42 U.S.C. § 1983 Against Defendants Smallwood, McCoole, Sawyer, Haden, Wood, Wynne, Nida, Kidd, Halsey-Harris, Noles, Coleman, Anderson, Croft, Evans, Johnson, McBride, Waddell, Coley, Brown, Medina, Williams, Lawson, Mayfield, Dawson, and King in their Individual Capacities for Deliberate Indifference to Serious Medical Needs In Violation of the Eighth Amendment.)**

123.    Plaintiff restates and incorporates each and every preceding paragraph by reference as if fully rewritten herein.

124.    Dai'yaan Longmire had a serious medical need, both by historical documentation and by the nature of his actions, complaints, and threats that were indicative

of escalating suicidality.

125.    Defendants were subjectively aware of Dai'yaan Longmire's serious medical condition and / or Dai'yaan's serious medical condition was so obvious and apparent that even a lay person would perceive the need for a doctor's attention and immediate medical / psychiatric intervention.

126.    Despite knowledge of Dai'yaan's serious medical conditions and needs, the Defendants named in this Claim for Relief were deliberately indifferent to and / or acted with callous / reckless disregard for those serious medical / psychiatric needs in failing and / or refusing to provide the necessary and appropriate medical / psychiatric care, assessment, evaluation, intervention, referral, and treatment.

127.    These Defendants knew, or should have known, that taking no action could and would result in the rapid deterioration of Dai'yaan's mental health and to take action on his suicidal ideations.

128.    The denial of mental health services for Dai'yaan Longmire under the circumstances constituted deliberate indifference given Defendants objective and subjective awareness of Dai'yaan's mental health needs in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

129.    As a direct and proximate result of the conduct of these Defendants in denying Dai'yaan Longmire necessary medical / psychiatric assessment, evaluation, care, intervention, referral, and treatment, Plaintiff's Decedent, Dai'yaan Longmire, was forced to endure and suffer extreme physical, mental, and emotional pain and suffering, and wrongful death.

**WHEREFORE,** Plaintiff prays for judgment against the Defendants named in this Claim for Relief, jointly and severally, for:

      a.      Compensatory damages in an amount that will fully and fairly compensate the Estate of Dai'yaan Longmire for the injury, damage, and loss Dai'yaan suffered prior to his death, and to compensate the beneficiaries of the Estate of Dai'yaan Longmire for their loss caused by his wrongful death;

      b.      Punitive damages in an amount that will serve to adequately punish and deter the conduct alleged herein;

      c.      Costs of suit and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

      d.      All such other relief which the Court deems appropriate.

## THIRD CLAIM FOR RELIEF

**(42 U.S.C. § 1983 Supervisory Liability Against Defendants Keeling, McCoole, Sawyer, Coleman, Coley, Brown, Medina, Williams, Lawson, Mayfield, Dawson, and King, in their Individual Capacities)**

130.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

131.    As Warden at Indian Creek, Defendant Keeling was the primary policy and decision maker at Indian Creek.

132.    Defendant Keeling, McCoole, Sawyer, Coley, Brown, Medina, Williams, Mayfield, Dawson, and King were employed by VDOC at Indian Creek as Warden, Sergeants, Lieutenants, Captains, Operational Manager, Information Officer, and Health Services Administrator.

133.    In their positions stated in the previous Paragraph, the Defendants identified in the Claim for Relief were the supervisors of corrections officers, including but not

limited to Defendants Smallwood, Anderson, Croft, Evans, Johnson, McBride, and Waddell.

134.    Defendants Smallwood, Anderson, Croft, Evans, Johnson, McBride, and Waddell were the subordinates of Defendants Keeling, McCoole, Sawyer, Coleman, Coley, Brown, Medina, Williams, Lawson, Mayfield, Dawson, and King.

135.    Defendants Keeling, Sawyer, Brown, Lawson, Mayfield, and King were the supervisors of Defendant McCoole as it pertained to issues related to providing (and the failure to provide) mental health treatment to mentally ill individuals in solitary confinement.

136.    Defendant McCoole was the subordinate of Defendants Keeling, Sawyer, Brown, Lawson, Mayfield, and King as it pertained to issues related to providing (and the failure to provide) mental health treatment to mentally ill individuals in solitary confinement.

137.    As supervisory officials at Indian Creek, Defendants Keeling, McCoole, Sawyer, Coleman, Coley, Brown, Medina, Williams, Lawson, Mayfield, Dawson, and King were aware of the repeated process of detaining mentally ill prisoners in solitary confinement without access to mental health services in a manner that rose to violations of the mentally inmates' Eighth Amendment Right to adequate mental health care, as well as violations of Title II of the ADA and the Rehabilitation Act as described throughout this Complaint and in Paragraphs 70-78.

138.    The actions of Defendants Smallwood, Anderson, Croft, Evans, Johnson, McBride, Waddell, and McCoole while Dai'yaan Longmire was in solitary confinement

were within the parameters of the policies, practices, customs of the VDOC as stated in Paragraphs 70-78.

139.    As the actions of Defendants Smallwood, Anderson, Croft, Evans, Johnson, McBride, Waddell, and McCoole were within the parameters of the VDOC's accepted and established practice of denying mental health services, including medication, therapy, suicide screening, and suicide reduction measures, to mentally ill inmates in solitary confinement, the conduct of Defendants Smallwood, Anderson, Croft, Evans, Johnson, McBride, Waddell, and McCoole amounted to 'a pervasive and unreasonable risk' of constitutional injury to citizens like Dai'yaan Longmire.

140.    Despite knowledge of the practice of denying mental health services, including medication, therapy, suicide screening, and suicide reduction measures, to mentally ill patients in solitary confinement at Indian Creek, Defendant Warden Keeling never attempted to modify the practice at Indian Creek but rather endorsed, ratified, and authorized the practice of his subordinates by keeping it in place.

141.    While knowing of the practice of denying mental health services, including medication, therapy, suicide screening, and suicide reduction measures, to mentally ill patients in solitary confinement at Indian Creek, Defendants McCoole, Sawyer, Coleman, Coley, Brown, Medina, Williams, Lawson, Mayfield, Dawson, and King participated in and authorized this practice.

142.    Dai'yaan Longmire's constitutional rights were violated when he was denied access to mental health services, including medication, therapy, suicide screening, and suicide reduction measures, while he was in solitary confinement leading resulting in

the deterioration of his mental health and eventual suicide.

143.    Dai'yaan Longmire's injuries and violations of his constitutional rights were the natural and predictable result of the VDOC's practice of denying mental health services, including medication, therapy, suicide screening, and suicide reduction measures, to mentally ill inmates in solitary confinement at Indian Creek, and thus there was a causal link between the Defendants named in this Claim for Relief's express and tacit authorization of this practice and Dai'yaan Longmire's injuries.

**WHEREFORE,** Plaintiff prays for judgment against Defendants Keeling, McCoole, Sawyer, Coleman, Coley, Brown, Medina, Williams, Lawson, Mayfield, Dawson, and King jointly and severally, for:

a.    Compensatory damages in an amount that will fully and fairly compensate the Estate of Dai'yaan Longmire for the injury, damage, and loss suffered by Dai'yaan Longmire prior to his death and the injury and loss suffered by the beneficiaries of the Estate of Dai'yaan Longmire for the injuries and damages they have incurred as a result of Dai'yaan Longmire's wrongful death;

a.    Punitive damages in an amount that will serve to adequately punish and deter the conduct alleged herein;

b.    Costs of suit and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

c.    All such other relief which the Court deems appropriate.

## FOURTH CLAIM FOR RELIEF

**(Violation of Section 504 of the Rehabilitation Act of 1973 – Virginia Department of Corrections)**

144.    Plaintiff incorporates each of the foregoing paragraphs with the same force

and effect as if fully restated herein.

145.   The VDOC is a public entity subject to the mandates and provisions of the Rehabilitation Act.

146.   The VDOC is responsible for ensuring that correctional facilities it owns and operates, including Indian Creek, comply with the mandates of the Rehabilitation Act.

147.   As Dai'yaan Longmire was known to carry a diagnosis of ADHD, bipolar disorder, depression, and anxiety, as well as a suspected personality disorder, Dai'yaan had a physical or mental impairment that substantially limited one or more of his major life activities, had a record of such impairment, and was regarded as having such impairment by the VDOC.

148.   Dai'yaan was qualified to participate in and receive psychiatric services for his known mental health conditions.

149.   At all times relevant to this action, the VDOC was required to provide adequate and appropriate mental health care to those individuals detained at Indian Creek, including Dai'yaan Longmire, and Dai'yaan Longmire, having been detained at Indian Creek, was qualified to receive this mental health care.

150.   Dai'yaan Longmire was a qualified individual with a disability as that term is used under the Rehabilitation Act.

151.   At all times relevant to this action, agents / employees of the VDOC, including but not necessarily limited to Defendants, had actual subjective awareness of Dai'yaan's disabilities and Dai'yaan, as well as others on his behalf, requested reasonable accommodations, including, but not necessarily limited to, psychiatric services and

treatment and placement in a facility with adequate psychiatric services and treatment, including medications.

152.    The VDOC, through the acts of its agents / employees of the Virginia Department of Corrections, including but not necessarily limited to the named Defendants, discriminated against Dai'yaan Longmire in violation of the Rehabilitation Act by refusing and / or failing to make these requested and reasonable accommodations for his disabilities by, among other acts, refusing and / or failing to place Dai'yaan in a facility equipped to care for Dai'yaan's psychiatric illnesses and failing and / or refusing to provide Dai'yaan access to or delivery of psychiatric services and treatment and continued placement of Dai'yaan in solitary confinement after it became apparent that he was contemplating self-harm.

153.    The VDOC, and through its supervisory staff, have engaged in a pattern of placing mentally ill inmates in restrictive housing without any specific security need or purpose.

154.    The VDOC, and through its supervisory staff, have engaged in a deliberate effort to place mentally ill inmates and psychologically fragile inmates in housing conditions that are virtually devoid of all human contact and interaction.

155.    VDOC has a history of denying mental health care and treatment to person's in solitary confinement. Specifically, VDOC has a policy of non-action whereby it does not provide any mental health screening to inmate's placed in solitary confinement who are known to have mental health disorders in order to assess their mental health status and likelihood of self-harm; the VDOC does not provide any periodic mental health assessment

to individuals known to have mental health disorders who are in solitary confinement in order to determine whether they are mentally stable enough to safely remain in solitary confinement; the VDOC does not provide any suicide screening to mentally ill inmates in solitary confinement; the VDOC does not remove from the cells of mentally unstable inmates in solitary confinement items that are likely to be used as ligatures for purposes of hanging one's self.

156.    The VDOC has a history increasing the length of sentences in solitary confinement for individuals with mental illnesses when those mental illnesses manifest themselves as emotional outbursts. That is, individuals in solitary confinement are effectively punished for displaying symptoms of their mental illnesses that are exacerbated by their detention in solitary confinement.

157.    As a result, VDOC has a policy, practice, and/or custom whereby inmates with mental health disorders are unfairly discriminated against and denied access to mental health care for serious medical and mental needs under circumstances where the need for care is known and obvious and the absence of care is likely to cause serious injury or death, all of which rises to the level of deliberate indifference to the mental health needs of those individuals in solitary confinement.

158.    The refusal to provide mental health assessment, care, and treatment to mentally ill individuals in solitary confinement, including to Dai'yaan Longmire, under the circumstances rises to the level of a constitutional violation, namely, deliberate indifference to the mental health needs of prisoners, including Dai'yaan Longmire.

159.    Dai'yaan Longmire had a serious medical need, both by historical

36

documentation and by the nature of his actions, complaints, and threats that were indicative of escalating suicidality.

160.    Defendants, as agents of the VDOC, were subjectively aware of Dai'yaan Longmire's serious medical condition and / or Dai'yaan's serious medical condition was so obvious and apparent that even a lay person would perceive the need for a doctor's attention and immediate medical / psychiatric intervention.

161.    Despite knowledge of Dai'yaan's serious medical conditions and needs, the Defendant was deliberately indifferent to and/or acted with callous / reckless disregard for those serious medical / psychiatric needs in failing and / or refusing to provide the necessary and appropriate medical / psychiatric care, assessment, evaluation, intervention, referral, and treatment.

162.    Defendant knew, or should have known, that taking no action could and would result in the rapid deterioration of Dai'yaan's mental health and to take action on his suicidal ideations.

163.    As a direct and proximate result of the VDOC's failure to accommodate the mental health needs of mentally ill inmates in solitary confinement, Dai'yaan Longmire was forced to endure and suffer physical and psychic suffering leading to his suicide on November 8, 2014.

**WHEREFORE,** Plaintiff prays for judgment against Defendant the Virginia Department of Corrections for:

a.    Compensatory damages in an amount that will fully and fairly compensate the Estate of Dai'yaan Longmire for the injuries and losses incurred by Dai'yaan prior to his death and by the

beneficiaries of Dai'yaan's estate by reason of his wrongful death;

b.      Costs of suit and reasonable attorneys' fees; and

c.      All such other relief which the Court deems appropriate.


Respectfully Submitted,

 /S/   John Cole Gayle, Jr.
John Cole Gayle, Jr., Esquire
VSB No. 18833
The Consumer Law Group, P.C.
1508 Willow Lawn Drive, Suite 220
Richmond, Virginia 23230
Telephone: 804 282-7900
Facsimile: 804 673-0316
*jgayle@theconsumerlawgroup.com*


/S *Michael A. Hill*
MICHAEL A. HILL (Ohio Bar #0088130)
(*Admitted Pro Hac Vice*)
WILLIAM B. EADIE (Ohio Bar #0085627)
(*Admitted Pro Hac Vice*)
**EADIE HILL TRIAL LAWYERS**
3100 East 45th Street, Suite 218
Cleveland, Ohio 44127
(216) 777-8856 (o) | (216) 716-2507 (f)
*michael.hill@eadiehill.com*
*william.eadie@eadiehill.com*

***Counsel for Plaintiff***

## <u>CERTIFICATE OF SERVICE</u>

Plaintiff served the foregoing *Amended Complaint* was served on April 17, 2017

via the Court's electronic filing system.

/S *Michael A. Hill*
_____
MICHAEL A. HILL (0088130)